**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ST. PAUL FIRE & MARINE INSURANCE CO.,:** | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | |
| **v.** : | **09-cv-3908** |
| : | |
| **PRIMAVERA SOFTWARE, INC, et al.,** : | |
| **Defendant.** : | |
| : | |

Goldberg, J.                                                                                            August 5, 2011

## MEMORANDUM OPINION

Plaintiff, St. Paul Fire & Marine Insurance Co., the insurer for Defendant, Primavera Software, Inc., has brought this declaratory judgment action against numerous Defendants. Plaintiff asserts that it is not obligated to provide automobile liability protection benefits for injuries occurring in an automobile accident caused by Primavera's employee who was operating a company vehicle for personal, non-work related reasons.

Before the Court are Plaintiff's motion for summary judgment and motion to strike the affidavit of Defendant John Wilburn, Primavera's employee and driver of the vehicle.  Also before the Court is the motion for summary judgment of Defendant Donna Hill, Wilburn's girlfriend, who was a passenger in the vehicle.  For the following reasons, Plaintiff's motions will be granted and Defendant's motion will be denied.

## I.     FACTUAL AND PROCEDURAL HISTORY[1]

At approximately 5:00 a.m. on April 13, 2008, a vehicle operated by Defendant Wilburn was

_____

[1]  Unless otherwise indicated, the following facts are undisputed.

involved in a motor vehicle accident on the New Jersey Turnpike.  At the time of the accident, Wilburn was driving a company vehicle owned by his employer, Defendant Primavera, and insured for Primavera by Plaintiff, St. Paul Fire & Marine Insurance Co.  (Pl.'s Statement of Facts, ¶¶ 15, 17-19; Def.'s Reply to Pl.'s Statement of Facts, ¶¶ 15, 17.)

According to Plaintiff, Wilburn was permitted to use the company vehicle for business tasks only, such as retrieving mail and running work-related errands for other Primavera employees. Wilburn was one of the few Primavera employees who had complete access to the company vehicle and used it on a daily basis.  Wilburn's responsibilities with the company vehicle never required him to leave the Philadelphia area.  (Wilburn Dep., pp. 11:10-24; 12:5-10.)

On April 12, 2008, Wilburn learned that his grandmother needed assistance in moving out of her home in Trenton, New Jersey and thus, he decided to use the company vehicle to help his grandmother move.  According to Wilburn, the company vehicle was larger than his regular vehicle and was therefore better suited to move furniture and other items.  (Wilburn Dep., p. 24:13-23.)

On April 13, 2008, Wilburn and Hill were returning the company vehicle to Primavera's office in Bala Cynwyd, Pennsylvania, when they were involved in the accident, both suffering injuries which required medical attention.  Ray Garman, also named by Plaintiff as a Defendant, was the driver of the other vehicle.  Plaintiff contends Hill and Garman subsequently filed claims under Primavera's policy for injuries they sustained as a result of the accident.  (Pl.'s Mot., Exs. B, F; Pl.'s Statement of Facts, ¶¶ 2, 4, 15, 17-19; Def.'s Reply to Pl.'s Statement of Facts, ¶¶ 15, 17-18.)[2]

---

[2]  Defendants Hill and Garman are the only Defendants seeking automobile liability protection benefits from Plaintiff.  Primavera Software is not seeking benefits from Plaintiff and did not file a motion for summary judgment or a response to Plaintiff's motion for summary judgment.

On April 16, 2008, Wilburn sent an e-mail to Anthony Lund, his direct supervisor at Primavera, explaining that he had used the company vehicle for personal reasons and had been involved in an accident.  (Pl.'s Mot., Ex. F.)

On May 19, 2008, Wilburn participated in a recorded interview in which he stated he had used the company vehicle for personal business and that he had previously been told by individuals from Primavera that the company vehicle was not for personal use.  On August 20, 2008, Wilburn signed a "Misconduct - Written Advisory" notice from Primavera acknowledging that he had used company property without authorization.  (Pl.'s Mot., Exs. G, H.)

Plaintiff filed a complaint on August 25, 2009, seeking declaratory judgment against Primavera, Wilburn, Hill, and Garman.  Due to their failure to respond to the complaint, a default was entered against Wilburn on January 27, 2010, and against Garman on March 3, 2010.  On May 6, 2010, an Order granting Plaintiff's motion for default judgment was entered against Wilburn and Garman.

On October 13, 2010, the last scheduled day for discovery in this matter, Hill submitted the affidavit of John Wilburn.  In the affidavit, Wilburn states that "[g]iven the fact that no one ever told [him] not to use the [company] vehicle, [he] felt that [he] had the right to use [the company vehicle]."  (Pl.'s Mot. to Strike, Ex. A, ¶ 11.)  According to Hill, Wilburn's affidavit was filed on the last day of discovery, because "[b]y the time counsel for Hill was able to obtain contact information for Wilburn . . . it did not appear feasible to schedule [his] deposition prior to the October 13, 2010, discovery end date[.]"  After Plaintiff's motion for sanctions against Hill regarding the affidavit was denied, I extended the discovery deadline and provided Plaintiff with an opportunity to depose Wilburn, which occurred, on December 23, 2010.  (Def.'s Resp. to Mot. to

Strike, p. 4.)

On January 12, 2011, Hill filed her motion for summary judgment.  In conjunction with their response in opposition, Plaintiff filed a motion to strike the Wilburn affidavit.  Plaintiff filed its motion for summary judgment on January 13, 2011.

## II.    LEGAL STANDARD

On a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A party moving for summary judgment must show that there are no issues of material fact and that judgment is appropriate as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of showing that there are no issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  Anderson, 477 U.S. at 250.

The non-moving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present evidence from which a jury could reasonably find in its favor.  Ridgewood Bd. of Edu. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).  In reviewing a motion for summary judgment, the Court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion."  Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

Where cross-motions for summary judgment have been filed, as is the case here, the following standards apply:

In cases where the parties filed cross-motions for summary judgment, each side

4

essentially contends that no issue of material fact exists from its perspective. We must, therefore, consider each motion for summary judgment separately. The standards under which we grant or deny summary judgment do not change because cross-motions are filed. Each party still bears the initial burden of establishing a lack of genuine issues of material fact. Such contradictory claims do not necessarily guarantee that if one party's motion is rejected, the other party's motion must be granted.

Williams v. Philadelphia Hous. Auth., 834 F.Supp. 794, 797 (E.D.Pa. 1993), aff'd 27 F.2d 560 (3d Cir. 1994) (citations omitted).

## III.   DISCUSSION

The primary issue before the Court - whether there is coverage for injuries resulting from the accident under the St. Paul policy issued to Primavera, depends on whether Wilburn was a "permitted user" of the company vehicle.  Whether to consider or strike the Wilburn affidavit is also pertinent to this analysis.

Defendant Hill argues that Wilburn was a "permitted user" of the company vehicle under the terms of the St. Paul policy at the time of the accident.  Plaintiff responds that Wilburn only had use of the company vehicle for company business, not personal use, thus precluding coverage.  For reasons that follow, I agree with Plaintiff.

"[T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury."  State Auto. Mut. Ins. Co. v. McCutcheon, No. 08-0350, 2009 WL 36446, at *4 (W.D. Pa. Jan. 6, 2009) (quoting Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).  When the language of an insurance policy is clear and unambiguous, the Court is required to give effect to that language.  McCutcheon, 2009 WL 36446, at *4 (citing Gene & Harvey Builders, Inc. v. Pa. Mfrs. Ass'n. Ins. Co., 517 A.2d 910, 913 (Pa. 1986)).  Here, the parties do not allege any ambiguity in the policy.

5

The language of the policy at issue provides in pertinent part:

**Who is Protected Under This Agreement**

\* \* \*

**Any permitted user.** Any person or organization to whom you've given permission to use a covered auto you own, rent, lease, hire, or borrow is a protected person [under the terms of the insurance policy].

(Pl.'s Mot., Ex. C, pp. 4-5.)  Under Pennsylvania law, "when this type of permissive use clause is at issue and it is determined that the driver deviated from the scope of the permission, coverage will be extended to the driver if the deviation from the named insured's permission is slight and inconsequential, but not if it is substantial." TICO Ins. Co. v. March, 155 F.Supp.2d 441, 447 (E.D. Pa. 2001) (citations omitted).

Under an omnibus insurance policy such as the one sub judice, "which designates as insured any person using the insured vehicle with the permission of the owner, the permission necessary to elevate the user to the status of an additional insured may be express or implied." Id. at 446 (citing Fed. Kemper Ins. Co. v. Neary, 530 A.2d 929, 931 (Pa. Super. 1987)).  Express permission is "permission that is clearly and unmistakably granted by actions and words, oral or written." Black's Law Dictionary (9th ed. 2009).  "Implied permission may arise from the relationship of the parties or by virtue of a course of conduct in which the parties have mutually acquiesced." TICO Ins. Co., 155 F.Supp. at 446 (citing Fed. Kemper Ins. Co., 530 A.2d at 931).  In order for implied permission to exist, there must be some "mutuality of agreement" that Wilburn was permitted to use the company vehicle for personal business at the time of the accident. McCutcheon, 2009 WL 36446, at *5.

Wilburn's own testimony indicates that he knew he did not have express permission to use

6

the vehicle for personal business.  Wilburn testified at deposition that it was "common knowledge" that employees were not permitted to use the company vehicle for personal reasons.  Wilburn also acknowledged that he had never e-mailed, called, or otherwise attempted to request permission from Primavera to use the company vehicle for personal business on the date of the accident.  Indeed, Wilburn admitted that he was "told" by Primavera that he was not entitled to use the company vehicle for personal use.  Based on these equivocal statements and admissions, there is no dispute of material fact, that Wilburn did not have express permission to use the company vehicle for personal use.  (Wilburn Dep., pp. 16:12-20, 25:13-27:7, 43:2-6, 50:19-22.)

Regarding implied consent, there is no testimony or evidence demonstrating that Wilburn often used the company vehicle for personal business and that Primavera knew of and acquiesced to this conduct.[3]  Indeed, Wilburn testified that prior to April 2008, he had never used the company vehicle for personal reasons.  This testimony alone is sufficient to demonstrate that implied permission to use the company vehicle did not exist as Wilburn's use of the company vehicle on April 13, 2008, was the first occasion on which he used the vehicle for personal business.  The evidence of record also demonstrates that Wilburn's use of the vehicle to move his grandmother's furniture was outside the scope of permission given to him by Primavera for work-related tasks. (Wilburn Dep., p. 13:11-13; Codkind Dep., pp. 8:11-24; 9:1-20.)

It is well established that even where a user has permission to operate a vehicle, insurance coverage will not extend to the user where he or she substantially deviates from the scope of the

---

[3]  Compare Adamski v. Miller, 681 A.2d 171, 173-74 (Pa. 1996) (holding implied consent existed where insured saw third-party driving car and did not object), with Beatty v. Hoff, 114 A.2d 173, 175-76 (Pa. 1955) (holding implied consent did not exist where third party used a vehicle on several occasions, although without knowledge or acquiescence of the insured owner).

permission granted.  See, e.g., Hall v. Wilkerson, 926 F.2d 311, 315 (3d Cir. 1991) (holding substantial deviation had occurred where user had operated insured vehicle while intoxicated after owner had forbidden driving under the influence); Fed. Kemper Ins. Co., 530 A.2d at 929 (holding substantial deviation had occurred where user allowed an unlicenced driver to operate insured vehicle despite owner's instructions to the contrary).  Accordingly, Defendant has failed to show any genuine issue of material fact as to whether or not Wilburn had express or implied permission to use the company vehicle for personal business.  Wilburn's use of the company vehicle to move his grandmother was clearly outside the scope of the work-related permission granted to him by Primavera.

Defendant Hill attempts to avoid summary judgment through the Wilburn affidavit.  Plaintiff urges that this is a sham affidavit and a last ditch attempt to defeat summary judgment.  Defendant posits that Wilburn's affidavit does not fall within the ambit of the "sham" affidavit doctrine, and therefore, should not be stricken from the record.

A sham affidavit "is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment."  Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).  A sham affidavit is incapable of raising a genuine issue of fact "because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant."  Id.  (citing Anderson v. Libery Lobby, Inc., 477 U.S. 242, 252 (1986)).  Because a sham affidavit is incapable of presenting any genuine issue of material fact for purposes of summary judgment, it may be disregarded and stricken from the record.  See Stukes v. AFSCME Local 2187, No. 05-4065, 2007 WL 2823653, at *4 (E.D. Pa. Sept. 26, 2007).

"When there is independent evidence in the record to bolster an otherwise questionable affidavit, courts have generally refused to disregard the affidavit." <u>Jiminez</u>, 503 F.3d at 254 (quoting <u>Baer v. Chase</u>, 392 F.3d 609, 625 (3d Cir. 2004)).  Such evidence includes situations where the affiant was "understandably mistaken, confused, or not in possession of all the facts during a previous deposition." <u>Baer</u>, 392 F.3d at 625 (internal citations and quotations omitted).  However, there is no requirement that an affidavit be presented at a specific time in a sequence of events and it may come before the deposition. <u>In re CitX Corp., Inc</u>, 448 F.3d 672, 679 (3d Cir. 2006) (holding prior affidavit was correctly discounted in light of subsequent deposition testimony).[4]

Hill argues that the sham affidavit doctrine cannot be applied because it was filed on October 13, 2008, prior to Wilburn's deposition on December 23, 2008.  As discussed above, however, whether a contradictory affidavit came before or after a deposition is of little consequence.  <u>Id.</u>

In his affidavit, Wilburn stated: "no one ever told me either in writing or otherwise I was not to use the [company vehicle] for personal use," and "[g]iven the fact that no one ever told me not to use the vehicle, I felt that I had the right to use it."  (Pl.'s Mot. to Strike., Ex. A, ¶¶ 10-11.)

However, in his deposition on December 23, 2008, Wilburn testified as follows:

> Q:    Did you know at that time that you did not have permission to use the vehicle?
>
> A:    Under those circumstances, for personal use, yes, what I used it for, yes.
>
> Q:    And you knew at the time that you used the vehicle that you did not have permission to use it for personal use; is that correct?

---

[4] <u>See</u> 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2738, at 334-35 (3d ed. 1998) ("[A] witness's affidavit will not be automatically excluded because it conflicts with the witness's earlier or later deposition, despite the greater reliability usually attributed to the deposition.").

A:      Yes.

(Wilburn Depo., pp. 26-27:24, 1-7.)

Wilburn further testified:

Q:      But you knew prior to the date of the accident that you did not have permission to use the vehicle for personal use?

A:      Yes. It was kind of understood.  It was just like I said, there was nothing written.  It was just a basic understanding.  Like I said, you know, you used the stuff for errands, but nothing personal.

(Wilburn Depo., p. 39:10-17.)

Moreover, in a recorded interview conducted on May 19, 2008, prior to the submission of his affidavit, Wilburn admitted that he was engaged in a personal venture at the time of the accident and that he had been told by Primavera that he was not entitled to use the company vehicle for personal use.  (Pl.'s Mot., Ex. G, p. 3.)[5]

Wilburn's deposition, interviews, and statements demonstrate not that he was "understandably mistaken or confused" about the facts at the time he signed the affidavit but, rather, that he knew he lacked permission to use the company vehicle for personal reasons.  Baer, 392 F.3d at 625.  Wilburn's only variance from his otherwise consistent testimony to that effect is in the affidavit.  Accordingly, because there is no independent evidence to bolster the affidavit, it falls within the scope of the sham affidavit doctrine and will be stricken.

**IV.      CONCLUSION**

For the foregoing reasons, Plaintiff's motion to strike (doc. no. 75) and motion for summary

---

[5]  Wilburn also sent an e-mail to his immediate supervisor accepting "full responsibility" for the accident and received a written reprimand from Primavera for using the company vehicle without authorization. (Pl.'s Mot., Exs. F, H.)

judgment (doc. no. 74) are granted and Defendant's motion for summary judgment (doc. no. 73) is denied.

An appropriate Order follows.